UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHELE S.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. C26-1590-MLP

ORDER

## I. INTRODUCTION

Plaintiff seeks review of the denial of her application for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends that the administrative law judge ("ALJ") erred by misevaluating her testimony and the lay witness evidence. (Dkt. # 10.) The Commissioner filed a response arguing that the ALJ's decision is free of legal error, supported by substantial evidence, and should be affirmed. (Dkt. # 13.) Plaintiff did not file a reply. Having considered the ALJ's decision, the administrative record ("AR"), and the parties' briefing, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further administrative proceedings.[1]

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 2.)

## II. BACKGROUND

Plaintiff was born in January 1978, has at least a high school education, and has worked as a coffee maker. AR at 37. Plaintiff was last gainfully employed in 2022. *Id.* at 270.

In January 2023, Plaintiff applied for benefits, alleging disability as of July 31, 2022. AR at 22. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* After the ALJ conducted a hearing in June 2025, the ALJ issued a decision finding Plaintiff not disabled. *Id.*

Using the five-step disability evaluation process,[2] the ALJ found, in pertinent part, Plaintiff had not engaged in substantial gainful activity ("SGA") since January 31, 2024, the amended alleged onset date. AR at 25. She has the severe impairments of irritable bowel syndrome ("IBS"); gastroesophageal reflux disease ("GERD"); asthma/chronic obstructive pulmonary disease ("COPD"); obesity; alcoholic hepatitis; chronic pancreatitis; alcohol use disorder in remission; unspecified trauma/stressor related disorder; somatic symptom disorder; major depressive disorder; and a generalized anxiety disorder ("GAD"). *Id.* Plaintiff can perform medium work with additional exertional, mental, and interactional limitations. *Id.* at 29.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 6. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

## III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may overturn the Commissioner's denial of social security benefits if the ALJ's decision rests on legal error or is not supported by substantial evidence. *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). Substantial evidence is defined

[2] 20 C.F.R. §§ 404.1520, 416.920.

as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (cleaned up). In applying this standard, the Court must consider the record as a whole to determine whether it contains sufficient evidence to support the ALJ's findings. *Id.*

Although the Court evaluates the record as a whole, it is not permitted to reweigh the evidence or substitute its judgment for that of the ALJ. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The ALJ is tasked with evaluating testimony, resolving conflicts in the medical evidence, and addressing ambiguities in the record. *Smartt*, 53 F.4th at 494-95. Where the evidence can be interpreted in more than one rational way, the ALJ's decision must be upheld. *Id.* Even if the ALJ erred, reversal is not warranted unless the error affected the outcome of the disability determination. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the ALJ's decision bears the burden of demonstrating harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## IV. DISCUSSION

### A. The ALJ Did Not Err in Evaluating Plaintiff's Testimony

Absent evidence of malingering, an ALJ is required to provide clear and convincing reasons for discounting a claimant's testimony. *See Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). That said, the ALJ is not required to believe every allegation, nor to analyze testimony line by line. *See Ahearn*, 988 F.3d at 1116; *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). The question is not whether this Court is convinced, "but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At her hearing, Plaintiff testified that she lives at home with her husband and one of her sons. AR at 52. Her husband works and financially takes care of her older son. *Id.* She does not

drive because her license was suspended three years ago following a DUI, so she relies on family to take her places. *Id.* She can complete minimal chores but needs to take multiple breaks. *Id.* at 53. Her husband does the cooking, and her sons help with the cleaning. *Id.*

Her GERD makes her frequently sick, and she has "a lot of stomach pain." AR at 59. She has a lung disease that makes it difficult to breathe, and any time she does anything physical she has a hard time breathing. *Id.* She has neuropathy which causes numbness in her feet, arms, and hands. *Id.* She takes medications for her conditions which "don't really work well together" as some cause stomach upset, while others are supposed to help her gastrointestinal conditions. *Id.* She needs to take frequent breaks throughout the day to take her medications. *Id.* Her mental health is also poor, and she has difficulty concentrating and paying attention to instructions. *Id.* She can only focus for two minutes at a time before she gets distracted. *Id.* at 60.

She can only stand in place for a minute or two before she needs to be able to move and move her legs. AR at 60. She can walk for five minutes before she needs a break, though she needs to go slowly, or breathing becomes difficult. *Id.* at 61. She can comfortably lift and carry about three to four pounds. *Id.* If her laundry basket is too full she needs to scoot it down the hall because she struggles to carry a fully laundry basket. *Id.*

She smokes but stopped drinking at the beginning of 2024. AR at 54. She entered court-ordered outpatient treatment program in January 2025, which she completed shortly before her hearing. *Id.* at 55. She worked as a barista until her health became too disruptive and she walked out during a conversation with her boss saying he was going to let her go. *Id.*

The ALJ considered Plaintiff's testimony and discounted it as inconsistent with the objective medical evidence, including improvement with compliance with medical advice and

treatment, and her activities. AR at 29-35. Plaintiff argues both reasons were error. (Dkt. # 10 at 2-13.)

Plaintiff points to seven instances of objective evidence that she argues the ALJ did not properly link to her testimony but fails to engage with the ALJ's stated reasoning and the conflicts she found. (*See* dkt. # 10 at 3-9.)

The ALJ found that the objective medical evidence contradicted Plaintiff's statements about when she stopped drinking. AR at 29-30. At the hearing the ALJ asked Plaintiff when she stopped drinking, and the following exchange took place:

> A: I stopped over a year ago, about a year and a half ago.
> Q: And when you're referring to a year and a half ago, are you referring to 2023?
> A: Yes.
> Q: Or 2024?
> A: It was the beginning of 2024.

*Id.* at 54. However, a June 2024 doctor's note indicated that Plaintiff "has been drinking heavily for over 10 years and has had intermittent periods of sobriety. She had been drinking 1/5th of vodka daily at some points. She has been to detox a few times in the past, never to a 30 day program." *Id.* at 1925. She was drinking "much less over the past 3-4 months since having a relapse in January-February (found out her sister had lung cancer)." *Id.* at 1925. At a January 2025 appointment, providers noted that "She says that up until Easter 2024 she had been drinking quite heavily but almost entirely stopped drinking by that point, until she started dealing with her sister's illnesses and eventual passing from lung cancer in August 2024. As a result she had episodes of binge drinking up until Septembe[r] or early October, and since then she has had no alcohol whatsoever." *Id.* at 2061. It was reasonable of the ALJ to conclude that this evidence contradicted Plaintiff's testimony of when she stopped drinking.

Nor has Plaintiff shown that the ALJ erred in finding that Plaintiff's symptoms improved when she completely stopped consuming alcohol. (*See* dkt. # 10 at 10-11.) Plaintiff testified that her GERD was making her "sick quite often[,]" and that she had "a lot of stomach pain." AR at 59. In November 2023, doctors noted that they were "[n]ot sure if this [abdominal pain] is an exacerbation of her comorbid conditions by the increase in alcochol,[sic] but I think that's the most likely etiology." *Id.* at 1679. By March of 2024, towards the end of Plaintiff's early 2024 relapse, doctors noted that Plaintiff's GERD was "[g]radually improving with decreased alcohol intake." *Id.* at 1885. In August of 2024, doctors indicated that Plaintiff "had signs of pancreatitis and some progression of colonic wall thickening on CT in the setting of heavier alcohol use[]" but her GERD had improved with current medications. *Id.* at 1849. The doctor warned that "alcohol exacerbates gastritis and esophagitis and prevents healing on" medication. *Id.* At a September of 2024 appointment doctors "congratulated her on . . . decreasing both alcohol and tobacco over the last year however we also talked about the importance of complete cessation of both to help her overall health and particularly her pancreatitis." *Id.* at 2022. It was reasonable of the ALJ to conclude that Plaintiff's symptoms improved when she completely stopped consuming alcohol.

Lastly, as the Commissioner correctly argues, Plaintiff does not challenge the ALJ's assessment of Dr. Moulton's opinion, which found that Plaintiff was capable of medium work. (Dkt. # 13 at 5 (citing AR 34, 82-88).) This conflict between the medical opinion and Plaintiff's testimony alone would be sufficient to uphold the ALJ's decision. *See Carmickle v. Comm'r of Soc. Sec. Admin*., 533 F.3d 1155, 1161 (9th Cir. 2008) (conflict between medical source opinion and claimant's testimony is a valid reason to discount a claimant's statements). If there is any error in the ALJ's remaining reasons for discounting Plaintiff's testimony, those errors are

harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (where ALJ provided at least one valid reason to discount testimony, error in remaining reasons is harmless).

**B. The ALJ Erred in Evaluating Lay Testimony**

An ALJ may discount lay witness statements for germane reasons, but where an ALJ gives no reason, germane or otherwise, she legally errs. *Fain v. Bisignano*, 191 F.4th 1161, 1169-70 (9th Cir. 2026). Plaintiff's husband, B.S., provided a third-party function report in March 2023, prior to the amended alleged onset date. AR at 309, 326. The ALJ considered this report in the context of Plaintiff's testimony, *id.* at 30, but did not provide an analysis explaining why she discounted the limitations B.S. observed. Given the Ninth Circuit's recent guidance in *Fain*, this Court cannot say that this error was harmless. 191 F.4th at 1170. B.S. described relevant details about Plaintiff's symptoms which Plaintiff did not mention in her testimony. For example, B.S. described how Plaintiff can no longer stand, and only takes baths rather than showers to avoid standing. AR at 310. He also described how Plaintiff's symptoms and capabilities vary from day-to-day, based on both her discomfort and respiratory issues. *Id.* at 311. Accordingly, remand is necessary to properly evaluate the lay witness evidence.

**C. Remand for Further Proceedings is the Appropriate Remedy**

Remand for an award of benefits "is a rare and prophylactic exception to the well-established ordinary remand rule." *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017). The Ninth Circuit has established a three-step framework for deciding whether a case may be remanded for an award of benefits: (1) the ALJ must have failed to provide legally sufficient reasons for rejecting evidence; (2) the record must be fully developed, leaving no useful purpose for further administrative proceedings; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See*

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Even if these conditions are met, the Court has the discretion to remand for further proceedings where the record as a whole creates serious doubts about a claimant's disability status. *Id.* Only in rare circumstances should a case be remanded for benefits. *See Treichler v. Colvin*, 775 F.3d 1090, 1100 (9th Cir. 2014).

Plaintiff argues that remand for an award of benefits is the appropriate remedy because, if the improperly rejected evidence were credited as true, Plaintiff's frequent absences would require a finding of disability. (Dkt. # 10 at 16-17.) Plaintiff further argues that "[t]he record does not require further development as the impact of the relevant limitations has already been considered." (*Id.*) But the ALJ's acceptance of conflicting medical opinions, which Plaintiff does not challenge, creates ambiguities in the record which an ALJ must resolve. *See Treichler v. Comm'r of SSA*, 775 F.3d 1090, 1101 (9th Cir. 2014) ("Administrative proceedings are generally useful where . . . there is a need to resolve conflicts and ambiguities . . ."). Accordingly, remand for further proceedings is the appropriate remedy.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED and this case is REMANDED for further administrative proceedings. On remand, the ALJ should evaluate the lay witness evidence.

Dated this 13th day of November, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge